STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-683

STATE OF LOUISIANA

VERSUS

CHADDRICK D. MAYES

**********

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. 2013-251
HONORABLE MARTHA A. O'NEAL, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Shannon J. Gremillion, Phyllis M. Keaty, and John E. Conery, Judges.

AFFIRMED.

**David W. Burton**
**District Attorney**
**Richard F. Blankenship**
**Assistant District Attorney**
**Post Office Box 99**
**DeRidder, Louisiana  70634**
**(337) 463-5578**
**Counsel for Appellee:**
     **State of Louisiana**

**Mitchel M. Evans, II**
**Attorney at Law**
**416 North Pine Street**
**DeRidder, Louisiana  70634**
**(337) 462-5225**
**Counsel for Defendant/Appellant:**
     **Chaddrick D. Mayes**

**KEATY, Judge.**

Defendant, Chaddrick D. Mayes, appeals his conviction for second degree murder. For the following reasons, we affirm.

## PROCEDURAL BACKGROUND

Defendant shot and killed Kenneth "Kenny" Palmer, III, following a verbal altercation which occurred between them while attending a wedding party. As a result, Defendant was charged with second degree murder, a violation of La.R.S. 14:30.1. Following a jury trial, Defendant was found guilty of that charge. The trial court thereafter heard and denied Defendant's motion for a post-verdict judgment of acquittal as well as his motion for new trial. The trial court subsequently sentenced Defendant to life imprisonment.

Defendant appeals his conviction, assigning the following three errors:

(1)     The jury failed to consider the evidence regarding the provocation exhibited by Palmer;

(2)     The jury was confused over the use of other crimes evidence, thereby giving great weight to same in rendering its verdict, exceeding the limited purposes for which other crimes evidence may be utilized, and;

(3)     The trial court abused its discretion by failing to determine the extent which Defendant would be entitled to the full version of jury instructions relative to his justifiable homicide defense. The shortened version of the jury instructions misled the jury in its deliberations as to whether Defendant was entitled to use lethal force.

## DISCUSSION

### I.     Errors Patent

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

## II.    First Assignment of Error

In his first assignment of error, Defendant contends that the jury failed to consider the provocation exhibited by Palmer.

The standard of review applicable to Defendant's sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007)).  The foregoing standard of review was originally enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979).  The *Jackson* standard of review, which is legislatively embodied in La.Code Crim.P. art. 821, "does not allow the appellate court 'to substitute its own appreciation of the evidence for that of the fact-finder.'"  *State v. Johnson*, 14-82, p. 4 (La.App. 3 Cir. 6/4/14), 140 So.3d 854, 857 (quoting *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521).  The appellate court does not "assess the credibility of witnesses or reweigh the evidence." *Johnson*, 140 So.3d at 857.

Defendant argues that the State failed to disprove that he acted in self-defense.  Killing in self-defense is governed by La.R.S. 14:20(A)(1), which states, in pertinent part, that a homicide is justified "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger."  In examining a self-defense claim, it is necessary to consider:  (1) whether the defendant reasonably believed that he was in imminent danger of death or great bodily harm; (2) whether the killing was necessary to prevent that death or great bodily harm; and (3) whether the defendant was the aggressor in the

conflict. *State v. Jenkins*, 98-1603 (La.App. 4 Cir. 12/29/99), 750 So.2d 366, *writ denied*, 00-556 (La. 11/13/00), 773 So.2d 157.

In *State v. Mincey*, 08-1315 (La.App. 3 Cir. 6/3/09), 14 So.3d 613, a case that is factually similar to the instant case, this court reviewed whether the State presented sufficient evidence to disprove the defendant's justification defense. The victim in *Mincey*, Jerome Dejean, was at a nightclub when he became involved in a verbal altercation with the defendant. The defendant subsequently shot Dejean after Dejean attempted to punch him. On appeal, the defendant argued that the State failed to disprove that he acted in self-defense. This court held, in pertinent part:

> The essence of his defense is that he was justified in responding to an attempted punch by shooting his opponent in the chest at close range. We recognize that Dejean had two friends with him. Thus, Defendant may have genuinely felt endangered; further, some level of fear was objectively reasonable. However, the level of force he used to defend himself was far beyond what was necessary under the circumstances.
>
> . . . .
>
> . . . [A]s mentioned earlier, responding to an oncoming punch by shooting the other person in the chest is an excessive response. Thus, the jury's determinations in the present case were not unreasonable. Therefore, the Defendant's reliance on self-defense is meritless.

*Mincey*, 14 So.3d at 615-16.

In this case, as in *Mincey*, Defendant's defense is that he was justified in shooting Palmer because Palmer lunged towards him or shoved a table towards him. Responding to an oncoming table or lunge "by shooting [Palmer] . . . is an excessive response."[1] *Mincey*, 14 So.3d at 615-16. Consequently, this court finds

---

[1] *See also State v. Levier*, 09-238 (La.App. 3 Cir. 11/4/09), 21 So.3d 1139, *writ denied*, 38 So.3d 298 (La. 6/4/10), wherein this court held that the evidence was insufficient to establish self-defense so as to support a conviction for second degree murder. Although the defendant

that the State presented sufficient evidence to disprove Defendant's claim of self-defense.  Accordingly, this assignment of error lacks merit.

## III.  <u>Second Assignment of Error</u>

In his second assignment of error, Defendant argues that the jury's confusion over the use of other crimes evidence caused it to give greater weight to his prior gun offense when rendering its verdict, exceeding the limited purposes for which other crimes evidence may be utilized.

"'Evidence of other crimes, wrongs, or acts committed by a defendant is generally inadmissible because of the substantial risk of grave prejudice to the defendant.'"  *State v. Raines*, 13-304, p. 7 (La.App. 3 Cir. 11/13/13), 124 So.2d 1275, 1278-79 (quoting *State v. Jarrell*, 07-1720, pp. 10-11 (La.App. 1 Cir. 9/12/08), 994 So.2d 620, 629-30).  There are statutory and jurisprudential exceptions, however, to this rule.  La.Code Evid. art. 404(B); *State v. Monroe*, 364 So.2d 570 (La.1978).  Specifically, in *Monroe*, the supreme court held that evidence of a prior criminal act that is similar to the instant offense was admissible at trial to negate a claim of self-defense.

According to the record in this case, Defendant was convicted in 2001 of aggravated criminal damage to property when he shot a gun towards an occupied vehicle.  In the instant case, the trial court heard the State's motion to determine the admissibility of other crimes evidence which pertained to Defendant's previous conviction in 2001.  The trial court held that the evidence regarding Defendant's previous conviction was admissible, although no mention could be made of the fact that he had been charged with attempted manslaughter.

---

claimed he was justified in shooting the victim because the victim was reaching in his pocket and the defendant knew or saw that he had a knife, this court found that the level of force used by the defendant was far beyond what was necessary.

4

At trial, the State presented Lieutenant Kenneth Pine who testified regarding Defendant's 2001 arrest and conviction. Lieutenant Pine testified that Defendant admitted to pulling the trigger of a "Larsen nine millimeter semi-automatic handgun[.]" Lieutenant Pine also testified that the bullet from that gun hit a car with occupants.

With respect to the prior gun conviction, the jury instructions contained in the record state the following:

> Evidence that the defendant was involved in the commission of an offense other than the offense for which he is on trial is to be considered only for the limited purpose(s) to show motive, intent, absence of mistake or accident, or to rebut claim of self-defense or other defense.

> Remember the accused is on trial only for the offense charged. You may not find him guilty of this offense merely because he may have committed another offense.

> Evidence of other crimes may be offered to prove such things as motive, opportunity, intent, preparation, plan, knowledge, and identity, absence of mistake or accident, but not to prove the "bad character" of the accused. To the extent that other crimes' evidence proves such matters as guilty knowledge or intent, it does help to prove the offense charged.

Thus, the trial court gave the jury instructions on limiting the use of the other crimes evidence.

In the present case, a bullet shot by Defendant from his gun hit and killed Palmer. Similarly, a bullet shot by Defendant from his gun in 2001 hit an occupied vehicle. This 2001 conviction arising from Defendant's act of shooting towards a vehicle showed the improbability that Defendant acted in self-defense in the instant case. Moreover, as previously mentioned, the appellate court does not "assess the credibility of witnesses or reweigh the evidence." *Johnson*, 140 So.3d at 857. Thus, this assignment lacks merit.

5

## IV.  Third Assignment of Error

In his third assignment of error, Defendant alleges that the trial court abused its discretion by failing to allow a full version of jury instructions relative to his justifiable homicide defense.  The shortened version of the jury instructions, according to Defendant, did not contain the following subsections provided in the justifiable homicide statute, La.R.S. 14:20:

> C. A person who is not engaged in unlawful activity and who is in a place where he or she has a right to be shall have no duty to retreat before using deadly force as provided for in this Section, and may stand his or her ground and meet force with force.
>
> D. No finder of fact shall be permitted to consider the possibility of retreat as a factor in determining whether or not the person who used deadly force had a reasonable belief that deadly force was reasonable and apparently necessary to prevent a violent or forcible felony involving life or great bodily harm or to prevent the unlawful entry.

Defendant contends that this failure to include the foregoing subsections misled the jury as to whether he was entitled to stand his ground and use lethal force.

The State counters that exclusion was proper, supporting its argument with jurisprudence found in the per curiam opinion of *State v. Wilkins*, 13-2539 (La. 1/15/14), 131 So.3d 839.  In *Wilkins*, the supreme court found that Subsections C and D of La.R.S. 14:20 must be read and applied together.  The State asserts that La.R.S. 14:20(C) and (D) are inapplicable in the present case because Subsection C is conditional pursuant to its language that "[a] person who is not engaged in unlawful activity . . . shall have no duty to retreat before using deadly force[.]" Since Defendant was previously convicted in 2001 of aggravated criminal damage to property, the State asserts that he was a convicted felon in unlawful possession of a firearm when the instant crime was committed.  Since *Wilkins* provides that Subsections C and D must be read and applied together, and since Defendant was

engaged in unlawful activity during the instant shooting, the State argues that Defendant is not entitled to the benefit of Subsections C and D. We agree with the State.

Defendant further contends that the State's reasoning regarding Subsections C and D conflicts with jurisprudence providing that a felon may arm himself in self-defense. Defendant notes the supreme court's holding in *State v. Blache*, 480 So.2d 304, 308 (La.1985),[2] wherein it states:

> We hold that when a felon is in imminent peril of great bodily harm, or reasonably believes himself or others to be in such danger, he may take possession of a weapon for a period no longer than is necessary or apparently necessary to use it in self-defense, or in defense of others. In such situation justification is a defense to the charge of felon in possession of a firearm.

In opposition, the State argues that Defendant did not "take possession of a weapon for a period no longer than is necessary" to defend himself as stated in *Blache*, 480 So.2d at 308. We agree with the State for the following reasons.

The record shows that Palmer was unarmed despite Defendant's belief to the contrary. This is shown by the trial testimony of the State's witness, Sergeant James Halbert, of the DeRidder Police Department. Sergeant Halbert testified that he arrived at the scene following the shooting. He testified that he looked at Palmer's body and failed to see any weapons on him. The State also presented Alzata "Brownie" Crawford at trial. Crawford, who was at the scene of the crime when it occurred, testified that after Palmer shoved the table and prior to the shooting, she did not see a gun in Palmer's hand.

---

[2] We note that *Blache* was overruled by *State v. Curtis*, 04-111 (La.App. 3 Cir. 8/4/04), 880 So.2d 112, *writ denied*, 04-2277 (La. 1/28/05), 893 So.2d 71, regarding a sentencing-related issue.

The record also contains the testimony of another eyewitness, Paul Fairley, who testified that Defendant showed his weapon approximately two or three times prior to the shooting. Although Defendant kept placing the gun behind his back after each reveal and prior to the shooting, Fairley testified that he "never took his hand off of the weapon." Fairley testified that he attempted to prevent the shooting by jumping in front of and talking to Defendant. Fairley testified that he managed to get Defendant to walk away with him. While they were walking away, however, Fairley testified that he heard a table move followed by the sound of a shooting gun. Fairley testified that Palmer subsequently dropped to the ground, and Defendant ran away.

The record also contains Defendant's testimony that he bought the gun which killed Palmer approximately four or five months prior to the shooting despite not having a concealed gun permit. Defendant testified that he placed the gun in his waist prior to the party. Thus, the foregoing testimony contained in the record shows that Defendant carried a gun into a party and shot an unarmed man. It further shows that Defendant possessed the gun longer than was necessary to defend himself, which is contrary to the holding in *Blache*.

We further note that the record does not reveal that Defendant was in "imminent peril" as stated in *Blache*, 480 So.2d at 308. As mentioned above, the evidence shows that Palmer was unarmed despite Defendant's belief that Palmer was armed. The evidence contained in the record also shows that Defendant was more physically fit than Palmer. This is shown by the testimony of Dr. Terry Welke, a forensic pathologist who performed Palmer's autopsy. Dr. Welke testified that Palmer was six feet tall, weighed 206 pounds, and was overweight. On the other hand, photographs submitted by the State at trial revealed that

8

Defendant had a muscular build. Thus, a jury could have reasonably believed that the foregoing evidence and testimony showed that Defendant was not at a disadvantage when compared to Palmer.

Based on the above, the trial court did not abuse its discretion by excluding the justifiable homicide defense statute found in La.R.S. 14:20(C) and (D) from the jury instructions. Thus, this assignment of error is without merit.

### DECREE

Defendant's conviction is affirmed.

**AFFIRMED.**