# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-632

STATE OF LOUISIANA

VERSUS

TERRELL JAVON BATISTE

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR 158063
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE
**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and John E. Conery, Judges.

**AFFIRMED.**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**P.O.Box 2125**
**Lafayette, LA 70502**
**(225) 806-2930**
**COUNSEL FOR DEFENDANT-APPELLANT:**
 **Terrell Javon Batiste**

**Hon. Keith A. Stutes**
**Lafayette Parish District Attorney - Fifteenth Judicial District Court**
**Cynthia K. Simon**
**Assistant District Attorney**
**P. O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
 **State of Louisiana**

**PICKETT, Judge.**

## FACTS

In the early morning hours of June 3, 2016, Drexel George and his fiancé Sholonda Francis went to their residence in Lafayette where they found the defendant, Terrell Javon Batiste, with a date, Kirsten Savoy. The defendant was a cousin of George's and had permission to stay there if George and Francis were home, but not when they were away. The house was dark, as the electricity was not on. According to Savoy, George told the defendant to leave, and the latter moved to comply. However, the defendant bumped into an air conditioner that had been left on the floor, making a loud noise. Reportedly, George became irritated, armed himself with a hammer, and pinned the defendant against a wall. Francis and Savoy both went outside. Savoy continued to the defendant's mother's home, which was nearby. Francis stayed on the porch and heard a gunshot. The defendant ran out of the house, then George walked out, bleeding from a gunshot wound. Investigators later found a hammer on the porch. Medical testimony confirmed that George died as a result of a gunshot to the body.

On August 16, 2016, a Lafayette Parish grand jury indicted the defendant on charges of second degree murder, a violation of La.R.S. 14:30.1, and possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. The parties selected a jury on December 18, 2018. The jury began hearing evidence the next day. At the conclusion of the trial, the jury returned a verdict of not guilty on the murder charge and guilty on the possession of a firearm charge. On January 31, 2019, the trial court sentenced the defendant to twelve years at hard labor.

The defendant now appeals his conviction, assigning a single error. We affirm the judgment of the trial court.

# ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find no errors patent.

## ASSIGNMENT OF ERROR

In his sole assignment of error, the defendant argues the evidence was insufficient to support his conviction of possession of a firearm by a convicted felon, in violation of La.R.S. 14:95.1. As at trial, he does not dispute possessing a gun long enough to shoot the victim. However, he repeats his trial argument that the shooting was justified.

> The general test for sufficiency is settled:
>
> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The statute that defines possession of a firearm by a convicted felon is La.R.S. 14:95.1(A), which states in pertinent part: "It is unlawful for any person who has been convicted of . . . any violation of the Uniform Controlled Dangerous Substances Law which is a felony . . . to possess a firearm or carry a concealed weapon." (footnote omitted). As the defendant acknowledges, he stipulated to a cocaine

2

conviction at trial. Also, he concedes that he possessed a firearm at the time of the shooting. His sole defense was and is justification. A felon charged under La.R.S. 14:95.1 may raise justification. The supreme court has explained:

> We hold that when a felon is in imminent peril of great bodily harm, or reasonably believes himself or others to be in such danger, he may take possession of a weapon for a period no longer than is necessary or apparently necessary to use it in self-defense, or in defense of others. In such situation justification is a defense to the charge of felon in possession of a firearm.

*State v. Blache*, 480 So.2d 304, 308 (La.1985).

Justifiable homicide is governed by La.R.S. 14:20. As previously mentioned, the jury acquitted the defendant of that offense. Since he conceded shooting the victim and claimed justification, said defense was the sole legal basis upon which the jury could have acquitted him of the murder. In a homicide case, the state bears the burden of proving beyond a reasonable doubt that a defendant did not act in self-defense. *State v. Griffin*, 06-543 (La.App. 3 Cir. 9/27/06), 940 So.2d 845, *writ denied*, 07-02 (La. 9/14/07), 963 So.2d 995. Under this legal standard, the jury could rationally have decided that the state failed to prove beyond a reasonable doubt that the defendant did not act in self-defense.

Again, justification is the defendant's sole defense. There were no eyewitnesses to the actual shooting. As noted above, Savoy testified that she saw George holding a hammer while he pinned the defendant against a wall. She also said she heard the victim exclaim that he would kill the defendant. After the incident, the defendant stated to Savoy, in a telephone call from jail, that shooting George was the only way for him to get out of the house. Investigators found a hammer on the victim's porch. The question remaining was whether the defendant was justified in arming himself with a gun. There is sufficient evidence in the record for the jury to conclude that at some point during the incident, George armed himself with a

3

hammer. There is sufficient evidence in the record to support a jury finding the defendant reasonably believed himself to be in imminent peril of great bodily harm and was, therefore, legally justified in possessing a gun the necessary amount of time required to use it in self-defense. *Blache*, 480 So.2d 304.

The question therefore becomes, in order for there to be sufficient evidence to convict him of the charge of possession of a firearm by a convicted felon, in violation of 14:95.1, whether he was already in possession of the firearm before it was necessary to possess it for self-defense, or whether he maintained possession of the firearm after the danger had passed.

The record indicates the house was dark since it had no electricity. The state questions how the defendant would have retrieved a gun in someone else's house and deployed it in the dark, and how he would have known it was loaded, if it was not already in his possession. The state also notes that a firearm was never found and infers that the defendant took it with him when he fled the scene. There is logic to the state's first point, but it is purely speculative. There is no evidence regarding where the gun was before the defendant deployed it. There is no evidence as to who owned the gun. Neither of the witnesses saw the defendant with a gun. Savoy stated she did not bring a gun into the house. Though there is circumstantial evidence of the likelihood that the defendant probably had the gun on him, there is no direct evidence in the record to support a finding that the defendant possessed a firearm before the shooting. The circumstantial evidence is insufficient to support a conviction.

The remaining question is whether the defendant continued to possess the weapon after the threat of imminent harm had passed. Clearly, there was a weapon in the defendant's hand at the time of the shooting. The defendant admitted to shooting the victim. Law enforcement found no weapon in the residence afterward.

4

The defendant fled immediately after shooting George. Savoy had already left the scene and Francis was outside. Further, there is no evidence that Francis removed the weapon or would want to do so. The evidence suggested that George walked out onto the porch carrying a hammer, and there is no indication he was carrying a firearm. No other people were present. Therefore, the circumstantial evidence sufficiently establishes the defendant took the gun with him when he ran from the house. The jury could have reasonably concluded, based on the evidence, that the defendant continued to possess the firearm after such possession was necessary and justified.

In reviewing the evidence under the *Jackson* standard, we find there is sufficient evidence to uphold the defendant's conviction of possession of a firearm by a convicted felon in violation of La.R.S. 14:95.1.

## CONCLUSION

The defendant's conviction is affirmed.

**AFFIRMED.**